## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLIAM POWELL, Individually and for Others Similarly Situated, | Case No. 3:20-cv-00161 |
| v. | JUDGE: DICK |
| ONESOURCE EHS, L.L.C. | MAGISTRATE: BOURGEOIS, JR. |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE

**Michael A. Josephson**
Texas Bar No. 24014780
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Carl A. Fitz**
Texas Bar No. 24105863
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 325-1100
Fax: (713) 325-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
cfitz@mybackwages.com

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**Philip Bohrer (#14089)**
phil@bohrerbrady.com
**Scott E. Brady (#24976)**
scott@bohrerbrady.com
**BOHRER BRADY, LLC**
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana 70809
Telephone: (225) 925-5297
Facsimile: (225) 231-7000

**ATTORNEYS IN CHARGE FOR PLAINTIFF AND PUTATIVE CLASS MEMBERS**

## TABLE OF CONTENTS

A.   INTRODUCTION ....................................................................................................1

B.   FACTUAL BACKGROUND. .....................................................................................1

1.   Relevant Procedural History. .......................................................................1

2.   Powell and the Putative Class Members Regularly Worked Overtime................2

3.   OneSource Paid Powell and the Putative Class Members on an Hourly Basis Without Any Guaranteed Salary. .....................................................................2

4.   OneSource's Straight Time for Overtime Policy is Widespread and Extends Beyond Powell and the Opt-in Plaintiffs..................................................................3

C.   ARGUMENT & AUTHORITIES .............................................................................3

1.   Conditional Certification is Warranted When Employees are "Similarly Situated." ...........3

2.   The Fifth Circuit Uses the Two-Stage *Lusardi* Approach—a Lenient Notice Standard Typically Resulting in Conditional Certification. ........................................4

3.   Powell and the Putative Class Members are Similarly Situated...........................7

4.   OneSource's Anticipated Arguments that Individualized Analyses are Required Do Not Preclude Conditional Certification...............................................................9

5.   Cases Involving Straight Time for Overtime are Well-Suited for Conditional Certification ...................................................................................................9

6.   Merits Issues are Not Relevant to a Decision on Conditional Certification. ....................10

6.1.    An Analysis of OneSource's Class-Wide Exemption Defenses is Premature. ......11

D.   NOTICE & CONSENT PROCEDURE ...................................................................13

1.   The Production of Contact Information and the Issuance of Reminder Notices is Routine in FLSA Collective Actions.......................................................................13

2.   Email and Text Message Notice Should be Provided to Putative Class Members. ...........14

3.   Powell Should be Allowed to Follow-up with Select Class Members by Telephone.........16

E.   CONCLUSION .....................................................................................................16

## TABLE OF EXHIBITS

| Ex. | Document |
|-----|----------|
| A | Declaration of Plaintiff William Powell |
| B | William Powell Time Sheets |
| C | William Powell Pay Stubs |
| D | William Powell Offer Letter |
| E | OneSource Employee Handbook |
| F | OneSource Interrogatory Answers |
| G | Proposed Notice and Consent Forms |

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Acevedo v. Allsup's Convenience Stores, Inc.*,
  600 F.3d 516 (5th Cir. 2010)................................................................................................6
*Alba v. Madden Bolt Corp.*,
  2002 WL 32639827 (S.D. Tex. June 5, 2002)....................................................................16
*Albanil v. Coast 2 Coast, Inc.*,
  No. 4:08-cv-00486, 2008 WL 4937565 (S.D. Tex. Nov. 17, 2008)....................................5
*Barnett v. Countrywide Credit Indus., Inc.*,
  No. 3:01-cv-1182, 2002 WL 1023161 (N.D. Tex. May 21, 2002) ......................................5
*Baucum v. Marathon Oil Corp.*,
  No. H-16-3278, 2017 WL 3017509 (S.D. Tex. July 14, 2017) ...........................................6
*Beall v. Tyler Techs., Inc.*,
  No. 2-08-cv-422, 2009 WL 3064689 (E.D. Tex. Sept. 23, 2009) .....................................16
*Blackburn v. APTIMServs., Inc*,
  No. 1:18-cv-00545, Doc. 86 (N.D. Ill. Feb. 19, 2019) .......................................................9
*Blake v. Hewlett-Packard Co.*,
  No. 4:11-cv-592, 2013 WL 3753965 (S.D. Tex. July 11, 2013)..........................................6
*Cantu v. Vitol, Inc.*,
  No. H-09-0576, 2009 WL 5195918 (S.D. Tex. Dec. 21, 2009) ..........................................6
*Coffin v. Blessey Marine Servs., Inc.*,
  No. H-11-0214, 2011 WL 1103795 (S.D. Tex. July 28, 2011) ....................................7, 13
*Coffin v. Blessey Marine Servs., Inc.*,
  No. H-11-0214, 2011 WL 1103795 (S.D. Tex. Mar. 23, 2011) ..........................................6
*D'Anna v. M/A-Com, Inc.*,
  903 F. Supp. 889 (D. Md. 1995)..........................................................................................5
*Davis v. Westgate Planet Hollywood Las Vegas, LLC*,
  No. 2:08-cv-00722-RCJ-PAL, 2009 WL 102735 (D. Nev. Jan. 12, 2009) .......................16
*Dreyer v. Baker Hughes Oilfield Operations, Inc.*,
  No. 4:08-cv-01212, 2008 WL 5204149 (S.D. Tex. Dec. 11, 2008)..............................6, 15
*Dyson v. Stuart Petrol. Testers, Inc.*,
  308 F.R.D. 510 (W.D. Tex. 2015) ...............................................................................16, 18
*Foraker v. Highpoint Southwest Servs., L.P.*,
  No. H-06-1856, 2006 WL 2585047 (S.D. Tex. Sept 7, 2006) ............................................6
*Garner v. G.D. Searle*,
  802 F. Supp. 418 (M.D. Ala. 1991) .....................................................................................7
*Grayson v. K-Mart Corp.*,
  79 F.3d 1086 (11th Cir. 1996) .........................................................................................5, 7
*Hall v. DominionEnergy, Inc., et al.*,
  No. 3:18-cv-00321, Doc. 92 (E.D. Va. Aug. 22, 2019) ......................................................9
*Heeg v. Adams Harris, Inc.*,
  907 F. Supp. 2d 856 (S.D. Tex. 2012)...........................................................................6, 12
*Hernandez v. Robert Dering Constr., LLC*,
  191 F. Supp. 3d 675 (S.D. Tex. 2016)................................................................................12

*Hobbs v. System OneHoldings, LLC,*
  No. 2:18-cv-00181, Doc. 82 (W.D. Pa. Oct. 15, 2019) ............................................9

*Hoffmann-La Roche v. Sperling,*
  493 U.S. 165 (1989).................................................................................... 7, 16

*Irvine v. Destination Wild Dunes Mgmt., Inc.,*
  132 F. Supp. 3d 707 (D.S.C. 2015) .........................................................................18

*Jackson v. New York Tel. Co.,*
  163 F.R.D. 429 (S.D.N.Y. 1995).............................................................................5

*Jirak v. Abbott Labs., Inc.,*
  566 F. Supp. 2d 845 (N.D. Ill. 2008) .......................................................................8

*Jones v. Cretic Energy Servs., LLC,*
  149 F. Supp. 3d 761 (S.D. Tex. Dec. 9, 2015) .................................... 15, 16, 17, 18

*Jones v. JGC Dallas LLC,*
  No. 3:11-cv-2743-O, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012) ............... 12, 17

*Kibodeaux v. Wood Group Production,*
  No. 4:16-cv-3277, 2017 WL 1956738 (S.D. Tex. May 11, 2017).............................6

*Kilmon v. Saulsbury Industries, Inc.,*
  No. 7:17-cv-00099-RAJ-DC, Doc. 45  (W.D. Tex. Dec. 13, 2017).........................8

*Klapatch v. BHI Energy I Power Servs., Inc.,*
  No. 1:18-cv-11581, Doc. 45, at *7-8 (D. Mass. Feb.22, 2019).............................8

*Landry v. Swire Oilfield Servs., LLC,*
  252 F. Supp. 3d 1079 (D.N.M. 2017) .....................................................................18

*Lang v. DirecTV, Inc.,*
  735 F. Supp. 2d 421 (E.D. La. 2010) .......................................................................5

*Ludlum v. C&I Engineering, LLC,*
  No. 4:18-cv-05192, Doc. 32 (E.D. Wa. May 16, 2019).........................................8

*Mairena-Rivera v. Langston Construction, LLC,*
  No. 16-850-JJB-EWD, 2017 WL 2778346, at *6 (M.D. La. June 27, 2017) ................ 4, 14

*Maynor v. Dow Chem. Co.,*
  No. G-07-504, 2008 WL 2220394 (S.D. Tex. May 28, 2008) .................................7

*McKnight v. D. Houston, Inc.,*
  756 F. Supp. 2d 794 (S.D. Tex. 2010) ...................................................................13

*Mooney v. Aramco Servs. Co.,*
  54 F.3d 1207 (5th Cir. 1995)................................................................................*passim*

*Nazih v. Café Istanbul of Columbus, LLC,*
  2018 WL 4334613 (S.D. Ohio Sept. 11, 2018) ......................................................18

*Nerland v. Caribou Coffee Co., Inc.,*
  564 F. Supp. 2d 1010 (D. Minn. 2007) ..................................................................11

*Nieddu v. Lifetime Fitness, Inc.,*
  977 F. Supp. 2d 686 (S.D. Tex. 2013) ...................................................................12

*Ortiz v. Rain King, Inc.,*
  No. 4:02-cv-04012, 2003 WL 23741409 (S.D. Tex. Mar. 10, 2003) ................. 7, 16

*Roussell v. Brinker Intern., Inc.,*
  441 Fed. Appx. 222 (5th Cir. 2011).......................................................................11

*Russell v. Illinois Bell Tel. Co.,*
  575 F. Supp. 2d 930 (N.D. Ill. 2008) ......................................................................8

*Sandoz v. Cingular Wireless LLC*,
    553 F.3d 913 (5th Cir. 2008) ..................................................................................5

*Sperling v. Hoffmann-La Roche, Inc.*,
    118 F.R.D. 392 (D.N.J. Jan. 5, 1988) ......................................................................7

*Terry v. ChicagoBridge & Iron Co.*,
    No. 4:17-cv-00367, Doc. 108 (S.D. Tex. March 8, 2018) ........................................8

*Thrower v. . UniversalPegasus, Int'l Inc.*,
    No. 3:19-CV-00068, 2020 WL 5258521, at *9 (S.D. Tex. Sept. 3, 2020) ...................15, 16

*Tolentino v. C&J Spec-Rent Services, Inc.*,
    No. 2:09-cv-00326, 2010 WL 2196261 (S.D. Tex. May 26, 2010) ..............................5

*Tucker v. Labor Leasing, Inc.*,
    872 F. Supp. 941 (M.D. Fla. 1994) ...........................................................................5

*Turner v. Nine Energy Service, LLC*,
    No. H-15-3670, 2016 WL 6638849 (S.D. Tex. Oct. 4, 2016) .....................................15

*Vargas v. The Powell Trident Co.*,
    No. H-9-1674, 2010 WL 730155 (S.D. Tex. Feb. 22, 2010) ....................................6, 12

*Villatoro v. Kim Son Restaurant, L.P.*,
    286 F. Supp. 2d 807 (S.D. Tex. 2003) ....................................................................6, 7

*Wade v. Furmanite America, Inc.*,
    No. 3:17-cv-00169, 2018 WL 2088011 (S.D. Tex. May 4, 2018) ...............................17

*Walker v. Honghua America, LLC*,
    870 F. Supp. 2d 462 (S.D. Tex. 2012) ....................................................................12

*Wellman v. Grand Isle Shipyard, Inc.*,
    No. 14-831, 2014 WL 5810529 (E.D. La. Nov. 7, 2014) ..........................................12

Statutes

29 U.S.C. § 216(b) ......................................................................................................1, 5, 14

Regulations

29 C.F.R. § 541.100(a)(1) .................................................................................................14
29 C.F.R. § 541.200(a)(1) .................................................................................................14
29 C.F.R. § 541.300(a)(1) .................................................................................................14
29 C.F.R. § 541.601(b)(1) .................................................................................................14
29 C.F.R. § 541.602 ...........................................................................................................4
29 C.F.R. § 541.602(a) .....................................................................................................15
29 C.F.R. § 541.604(b) .....................................................................................................15

A.    **INTRODUCTION**

Powell filed this collective action on behalf of hourly employees who were paid "straight time for overtime" by OneSource in violation of the Fair Labor Standards Act (FLSA). Doc. 1. Powell claims OneSource subjected him and numerous other hourly employees to a common and illegal practice of classifying hourly workers as exempt and paying them the same hourly rate for all hours worked – including those hours over 40 in a single week (or, "straight time for overtime"). Powell moves for stage-one conditional certification of a Putative Class consisting of:

> **All hourly employees of OneSource who were paid straight time for overtime in the past 3 years (the Putative Class Members).**

As demonstrated below, Powell satisfies his modest burden to identify a common policy or practice alleged to violate the FLSA. Therefore, this Court should grant Powell's Motion and authorize him to send notice of this Action to other similarly situated hourly employees paid straight time for overtime by OneSource the past three (3) years in the manner described herein.

B.    **FACTUAL BACKGROUND.**

    1.    **Relevant Procedural History.**

Powell filed this collective action on March 17, 2020, alleging OneSource deprived him and other similarly situated workers overtime in violation of the FLSA by paying them straight time for overtime. *See* Doc. 1. OneSource is an energy, production, and construction service provider that provides workers throughout the Country (and internationally) to assist with construction, industrial and turnaround services. *See* https://onesourceehs.com/ (last visited September 8, 2020). To provide these services, OneSource employs numerous hourly workers at locations throughout the Country who it classifies as exempt and pays using a straight time for overtime plan. *See, e.g.*, Exhibit A, at ¶¶ 6, 8, 13 (Declaration of William Powell); Exhibit B (William Powell Timesheets); Exhibit C (William Powell Paystubs); Exhibit F, pp. 1-3 (Answer to Interrogatory No. 1 Identifying Straight Time for

Overtime Workers). OneSource relies on a common employee handbook for all of its workers, which identifies a common overtime pay and timekeeping policy. Exhibit E, at pp. 21-22.

### 2. Powell and the Putative Class Members Regularly Worked Overtime.

Powell and the Putative Class Members customarily worked more than 40 hours a week. Ex. A, at ¶¶ 10-11, 17-18. Indeed, OneSource typically required Powell and the Putative Class Members to work between 70 and 80 hours each week. *Id*.; *see generally* Ex. B.

### 3. OneSource Paid Powell and the Putative Class Members on an Hourly Basis Without Any Guaranteed Salary.

OneSource maintained a common practice and policy applicable to Powell and all hourly employees it paid straight time for overtime and misclassified as exempt. OneSource employed Powell and the Putative Class Members on an hourly basis without any guaranteed salary. Ex. A, at ¶¶ 10, 11, 17; *see also* Ex. F at pp. 1-3 (identifying ten OneSource job positions paid straight time for overtime). The fact OneSource paid these workers on an hourly basis with no salary guarantee is reflected in the Putative Class Members' employment agreements, payroll records, and time sheets. *See, e.g.*, Ex. B (timesheets); Ex. C (pay stubs); Ex. D (offer letter describing Powell as "Salaried **Non-Exempt**") (emphasis added).

The record shows OneSource paid Powell and the Putative Class Members the same hourly rate for all hours worked – regardless of the number of hours they worked in a day or workweek. Ex. A, at ¶¶ 6-8, 12, 17. When Powell and the Putative Class Members worked over 40 hours in week, OneSource paid them for these hours at the same hourly rate it paid for hours worked under 40 in that same week. Ex. A, at ¶¶ 10, 11; Ex. B; Ex. C Ex. D; Ex. F at pp. 1-3 (Answer to Interrogatory No. 1). And when Powell and the Putative Class Members worked fewer than 40 hours in a week, OneSource paid them only for the hours they worked that week (again, at their regular hourly rate). Ex. A, at ¶ 9. If Powell and the Putative Class Members did not work in a given week, they were not paid (let alone paid any guaranteed salary). Ex. A, at ¶ 9; 14; 17. OneSource applied this uniform policy

of paying Powell and the Putative Class Members straight time for overtime, regardless of actual job title, rate of pay, location, supervisor, or any other individualized factor. Ex. A, at ¶¶ 14, 17-20; Ex. F at pp. 1-3 (Answer to Interrogatory No. 1).

**4. OneSource's Straight Time for Overtime Policy is Widespread and Extends Beyond Powell and the Opt-in Plaintiffs.**

OneSource's policy of paying its hourly employees straight time for overtime extended well beyond Powell (and the Opt-in Plaintiffs). Ex. A, at ¶¶ 14, 17, 18, 19. Indeed, OneSource uniformly subjected **all** of its hourly employees to this pay policy that violates the FLSA, regardless of the location(s) they worked, their assigned supervisor(s), and job position(s). Ex. A, at ¶¶ 14, 17, 18, 19; Ex. F at pp. 1-3 (Identifying ten different job titles subject to OneSource's straight time for overtime policy in its Answer to Interrogatory No. 1). OneSource's straight time for overtime policy originates from a common HR department under a single HR Manager. Ex. F at pp. 3-4 (Answers to Interrogatory Nos. 2 and 3) ("BJ Duplessis […] independently considered whether the [sic] each employee's pay complied with the FLSA."); *see also* Ex. E at ONESOURCE 000043 – 000044 (Sections 2.3 and 2.4 defining Salaried vs. Hourly and Exempt/Non-Exempt employees, respectively). OneSource uniformly applied its illegal straight time for overtime compensation policy to all of its hourly employees.

**C. ARGUMENT & AUTHORITIES**

**1. Conditional Certification is Warranted When Employees are "Similarly Situated."**

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Under Section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213-16 (5th Cir. 1995); *see also Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 435 (1996); *D'Anna v. M/A-Com, Inc.*, 903 F. Supp. 889, 893 (D. Md. 1995).

The plaintiff's claims need not be **identical** to the potential opt-ins, but rather they need only be **similar**. *See, e.g., Mairena-Rivera v. Langston Constr., LLC*, No. CV 16-850-JJB-EWD, 2017 WL 2778346, at *2 (M.D. La. June 27, 2017) ("The court uses a 'lenient' standard to determine whether similarly situated individuals exist.") (citing *Mooney*, 54 F.3d at 1214); *Ramirez v. Load Trail, LLC*, 333 F.R.D. 89, 94 (E.D. Tex. 2019) ("[T]he court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated."); *Hester v. Phillips 66 Co., et al.*, No. 4:18-cv-1078, Doc. 69, at *7 (S.D. Tex. July 31, 2019) (noting job positions need not be "identical" but must be "similar"); *Grayson*, 79 F.3d at 1096; *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (M.D. Fla. 1994). Indeed, a plaintiff need only to demonstrate "a reasonable basis" for the allegation that a class of similarly situated persons may exist. *Hester*, No. 4:18-cv-1078, Doc. 69, at *6; *Grayson*, 79 F.3d at 1097; *see Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995) (finding plaintiffs to be similarly situated when they together were alleged victims of a "common policy or scheme or plan that violated the law"); *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15-cv-00330-RP; ECF No. 31 (W.D. Tex. Oct. 5, 2015) (granting conditional certification of a class of all workers who were paid a day rate regardless of job duties). As one court explained:

> [T]he court need not find uniformity in each and every aspect of employment to determine [that] a class of employees is similarly situated. The remedial nature of the FLSA and § 216 militate strongly in favor of allowing cases to proceed collectively.

*Tolentino v. C&J Spec-Rent Services, Inc.*, No. 2:09-cv-00326, 2010 WL 2196261, at *4 (S.D. Tex. May 26, 2010)).

### 2. The Fifth Circuit Uses the Two-Stage *Lusardi* Approach—a <u>Lenient</u> Notice Standard Typically Resulting in Conditional Certification.

In the Fifth Circuit, the "typical" method for administering collective actions is the "two-step" *Lusardi* approach. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008); *Lang v. DirecTV, Inc.*, 735 F. Supp. 2d 421, 434-435 (E.D. La. 2010); *Hester*, No. 4:18-cv-1078, Doc. 69, at *3 (noting that "[m]ost courts [in the Fifth Circuit] use the *Lusardi* approach" and collecting cases). Under the *Lusardi*

approach, the court "determines whether the putative class members' claims are sufficiently similar" to authorize notice to potential class members. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010) (citing *Mooney*, 54 F.3d at 1213-14). Because the first step takes place prior to discovery, the standard for notice "is a lenient one" which typically results in the conditional certification of the representative class.[1]

At this initial state of the *Lusardi* approach, a plaintiff need only make a minimal showing to persuade the court to issue notice to potential class members. *Ramirez*, 333 F.R.D., at 94 ("Because the Court has minimal evidence before it at this stage, "the determination is made using a fairly lenient standard requiring nothing more than substantial allegations that the putative class members were victims of a single decision, policy or plan."); *Hester*, 4:18-cv-1078, Doc. 69, at *4 ("the [conditional certification] standard is lenient and typically results in conditional certification."); *Kibodeaux v. Wood Group Production*, No. 4:16-cv-3277, 2017 WL 1956738, at *1-2 (S.D. Tex. May 11, 2017) (Ellison, J.) (noting the court's decision at this stage is made using a "fairly lenient standard, which typically results in 'conditional certification' of a representative class.").

Indeed, in deciding whether to issue notice, courts only require "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214, n.8; *Heeg v. Adams Harris, Inc.*, 907 F.Supp.2d 856, 862 (S.D. TEx. B012) (Rosenthal, J.). Doing otherwise would unnecessarily hinder the development of collective actions and would

---

[1] *See, e.g.*, *Mooney*, 54 F.3d at 1214; *Hernandez v. Taylor Safety Consulting, LLC*, No. 2:16-cv-00198, Min. Entry dated Jan. 11, 2017 (S.D. Tex. Jan. 11, 2017) (Ramos, J.) (conditionally certifying FLSA class of day rate workers classified as independent contractors); *Blake v. Hewlett-Packard Co.*, No. 4:11-cv-592, 2013 WL 3753965, at *4 (S.D. Tex. July 11, 2013) (Harmon, J.); *Coffin v. Blessey Marine Servs., Inc.*, No. H-11-0214, 2011 WL 1103795, at *2 (S.D. Tex. Mar. 23, 2011) (Atlas, J.); *Vargas v. The Powell Trident Co.*, No. H-9-1674, 2010 WL 730155, at *7 (S.D. Tex. Feb. 22, 2010) (Harmon, J.) (noting the certification of collective actions is subject to a two-step process with a lenient standard that typically results in conditional certification of a representative class)*; Cantu v. Vitol, Inc.*, No. H-09-0576, 2009 WL 5195918, at *3 (S.D. Tex. Dec. 21, 2009) (Rosenthal, J.) *Foraker v. Highpoint Southwest Servs., L.P.*, No. H-06-1856, 2006 WL 2585047, at *3 (S.D. Tex. Sept 7, 2006) (Atlas, J.); *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807, 810 (S.D. TEx. B003) (granting certification with only a minimal preliminary showing that the putative class members were similarly situated based on testimony and pay stubs); *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. 4:08-cv-01212, 2008 WL 5204149, at *1 (S.D. Tex. Dec. 11, 2008) (Smith, M.J.) (noting that review at the notice stage is lenient and plaintiffs must show only that there is some factual basis for trying their cases together with the cases of other potential members.).

undermine the "broad remedial goals" of the FLSA. *Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991); *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. Jan. 5, 1988) ("[N]otice to absent class members need not await a conclusive finding of 'similar situations.'"). A plaintiff meets this burden by showing that there are similarly situated employees who are potential claimants by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *See Mooney*, 54 F.3d at 1214 n.8; *Villatoro*, 286 F. Supp. 2d at 810 (stating that notice is appropriate where plaintiff demonstrates that potential class members were together the victims of a particular alleged policy or practice). Further, a plaintiff need only demonstrate "a reasonable basis" that a class of similarly situated persons exists. *Grayson*, 79 F.3d at 1097; *Ortiz v. Rain King, Inc.*, No. 4:02-cv-04012, 2003 WL 23741409 (S.D. Tex. Mar. 10, 2003) (finding one declaration and the complaint sufficient); *Hester*, 4:18-cv-1078, Doc. 69, at *3-4 (citing *Maynor v. Dow Chem. Co.*, No. G-07-504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008)).

A court may deny a plaintiff's right to proceed collectively **only if** the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice. *Coffin v. Blessey Marine Servs., Inc.*, No. H-11-0214, 2011 WL 1103795, at *2 (S.D. Tex. July 28, 2011) (Atlas, J.); *Hester*, 4:18-cv-1078, Doc. 69, at *4. Again, doing otherwise would unnecessarily hinder the development of collective actions and would undermine the "broad remedial goals" of the FLSA. *Garner*, 802 F. Supp. at 422; *Sperling*, 118 F.R.D. at 407 ("[N]otice to absent class members need not await a conclusive finding of 'similar situations.'"). Ultimately, allowing early notice and full participation by the opt-ins "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive." *Sperling*, 118 F.R.D. at 406. Once the notice and opt-in period is complete, the court will have the benefit of knowing the actual makeup of the class. Thus, early notice helps courts to manage the case because it can "ascertain the contours of the action at the outset." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 172 (1989).

At the second step, "following the completion of the opt-in process and further discovery, the defendant may ask the Court to reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008).

### 3. Powell and the Putative Class Members are Similarly Situated.

At the conditional certification stage, courts "require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" that is alleged to violate the FLSA. *Mooney*, 54 F.3d at 1213-14. Powell meets this burden. Thus, conditional certification is warranted.

Powell seeks collective treatment for a specific class of workers who were uniformly subjected to a pay policy that violates the FLSA (straight time for overtime). OneSource's straight time for overtime policy failed to compensate these employees, including Powell, for overtime worked at the proper premium rates, making Powell and all Putative Class Members paid under OneSource's straight time for overtime policy similarly situated.

OneSource's straight time for overtime policy not only violates the FLSA, but is also a *per se* violation of the FLSA that does not depend on the job title or job responsibilities of each particular plaintiff. *See*, *e.g.*, *Terry v. Chicago Bridge & Iron Co.*, No. 4:17-cv-00367, Doc. 108 (S.D. Tex. March 8, 2018) (conditionally certifying nationwide class of straight time for overtime workers regardless of job title or job duties); *Kilmon v. Saulsbury Industries, Inc.*, No. 7:17-cv-00099-RAJ-DC, 2017 WL 7052328, at *1 (W.D. Tex. Dec. 13, 2017); *Ludlum v. C&I Engineering, LLC*, No. 4:18-cv-05192, Doc. 32 (E.D. Wash. May 16, 2019) (conditionally certifying a nationwide class of straight time for overtime workers regardless of job title or job duties); *Klapatch v. BHI Energy I Power Servs., Inc.*, No. 1:18-cv-11581, 2019 WL 859044, at *1 (D. Mass. Feb. 22, 2019) (conditionally certifying a nationwide class of straight time for overtime workers regardless of job title or job duties and rejecting the employer's

argument that the court need to engage in an individual analysis of the employees' respective job duties as premature at the notice stage).[2] As one court conditionally certifying a nationwide class of straight time workers eloquently stated:

> [P]urported dissimilarities between members of [the] proposed class are irrelevant because of common scheme or policy alleged affects all hourly employees paid straight time for overtime. In sum, the alleged FLSA violations in this case do not turn on the nature of the work performed.

*Kilmon*, No. 7:17-cv-00099-RAJ-DC, Doc. 45, at *5.

Powell presents ample evidence showing that he and the Putative Class Members were uniformly subjected to the same policy (straight time for overtime) regardless of any individualized factors. Therefore, these workers are similarly situated under the lenient *Lusardi* standard. Specifically, Powell demonstrated:

- OneSource paid Powell and the Putative Class Members the same hourly rate for all hours worked regardless of the number of hours they worked.[3]
- OneSource failed to pay Powell and the Putative Class Members overtime compensation at the proper premium rate (1 ½ times their regular rates).[4]
- OneSource did not pay Powell and the Putative Class Members a guaranteed salary.[5]
- Powell and the Putative Class Members regularly worked more than 40 hours each week.[6]
- Powell and the Putative Class Members typically worked 50-hour shifts for up to 7 days a week.[7]
- OneSource maintained a uniform and common policy of not paying its hourly employees overtime regardless of individualized factors, such as location, job position, and supervisor.[8]
- OneSource required Powell and the Putative Class Members to adhere to its (or its clients') policies and procedures when performing their jobs.[9]

---

[2] *See also Blackburn v. APTIM Servs., Inc.*, No. 1:18-cv-00545, Doc. 86 (N.D. Ill. Feb. 19, 2019) (approving a settlement of a nationwide collective of 1,045 employees paid straight time for overtime); *Hobbs v. System One Holdings, LLC*, No. 2:18-cv-00181, Doc. 82 (W.D. Pa. Oct. 15, 2019) (approving settlement of collective paid straight time for overtime); *Hall v. Dominion Energy, Inc., et al.*, No. 3:18-cv-00321, Doc. 92 (E.D. Va. Aug. 22, 2019) (same)

[3] Ex. A, at ¶¶ 5, 6, 8; Ex. F at pp. 1-3, Answer to Interrogatory No. 1.

[4] Ex. A, at ¶¶ 13-16; Ex. F at pp. 1-3, Answer to Interrogatory No. 1.

[5] Ex. A, at ¶ 18; Exs. B-C.

[6] Ex. A, at ¶ 16.

[7] Ex. A, at ¶¶ 10-11.

[8] Ex. A, at ¶¶ 14, 19, 20; Ex. F at pp. 1-3, Answer to Interrogatory No. 1 (identifying ten job positions subject to the common policy); *id.* at pp. 3-4 (identifying a common HR manager responsible for FLSA classification decisions).

[9] Ex. A, at ¶ 19.

Accordingly, Powell easily satisfies his burden of demonstrating he and the Putative Class Members are similarly situated under the lenient *Lusardi* standard.

**4. OneSource's Anticipated Arguments that Individualized Analyses are Required Do Not Preclude Conditional Certification.**

OneSource will likely argue that this case is inappropriate for certification by suggesting the inquiry is inherently "individualized" or "fact-intensive." But in evaluating conditional certification, while "[t]here is need for care in evaluating distinctions among employees, … those distinctions must make a difference relevant to the legal issues presented." *Roussell v. Brinker Intern., Inc.*, 441 Fed. Appx. 222, 226-27 (5th Cir. 2011). The tired employer argument Powell anticipates—that no two workers are alike, and the Court must undertake an individualized, person-by-person analysis to resolve the case—is undermined by the fact that OneSource paid a distinct group of workers (its hourly employees) straight time for overtime in one fell swoop, without examining each individual's job duties, pay, or other employment provisions.

Thus, the Putative Class Members' overtime claims are based on a "single decision, policy, or plan"—that OneSource unlawfully failed to pay certain workers overtime in violation of the FLSA. *See Mooney,* 54 F.3d at 1214 n.8 (5th Cir. 1995); *see also Nerland v. Caribou Coffee Co., Inc.*, 564 F.Supp.2d 1010, 1024 (D. Minn. 2007) ("The Court finds it disingenuous for [defendant], on one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming the plaintiffs cannot proceed collectively to challenge the exemption.").

**5. Cases Involving Straight Time for Overtime are Well-Suited for Conditional Certification**

Courts in throughout the Fifth Circuit routinely conditionally certified FLSA cases involving workers) paid straight time for overtime, finding such a pay scheme to be a common policy or plan for purposes of conditional certification. *See, e.g., Wellman v. Grand Isle Shipyard, Inc.*, No. 14-831, 2014

WL 5810529, at *4 (E.D. La. Nov. 7, 2014) ("The alleged 'straight time for overtime' policy constitutes a 'factual nexus which binds the named plaintiffs and the potential class members together.'"); *Richardson v. NES Global LLC*, No. H-20-223, Doc. 40 (S.D. Tex. May 20, 2020) (granting conditional certification of "all [of defendant's] employees categorized as exempt from the Fair Labor Standards Act's overtime pay requirements and not paid overtime for all hours worked over forty in any given workweek in the past 3 years"); *Cantrell v. Lutech Resources Inc.*, No. 4:17-cv-2679, Doc. 21 (S.D. Tex. Feb. 9, 2018) (conditionally certifying nationwide class of hourly employees paid straight time for overtime); *Kilmon*, No. 7:17-cv-00099-RAJ-DC, Doc. 45, at *5 (same); *Terry*, No. 4:17-cv-00367, Doc. 108 (conditionally certifying class of straight time for overtime workers); *Salinas v. Wood Group PSN Commissioning Servs., Inc.*, No. 2:17-cv-177, Doc. 34, at *11 (S.D. Tex. Dec. 26, 2017) (conditionally certifying class of nationwide oilfield personnel paid straight time for overtime).[10]

### 6. Merits Issues are Not Relevant to a Decision on Conditional Certification.

A disagreement about the merits of Powell's claims are not grounds for denying conditional certification. It is well established that "courts do not review the underlying merits of the action in deciding whether to conditionally certify the class" "because discovery has not yet occurred." *Potter v. Cardinal Health 200, L.L.C.*, 381 F.Supp.3d 729, 737 (E.D. Tex. 2019) (quoting *Mooney*, 54 F.3d at 1214 n.8).[11]

Merits-based decisions are inappropriate at the notice stage of conditional certification because certification at the notice stage is "conditional," and the Court may later choose to "decertify"

---

[10] *See also Hernandez v. Robert Dering Constr., LLC*, 191 F. Supp. 3d 675, 684 (S.D. Tex. 2016) (conditionally certifying class of construction workers straight time for overtime); *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 863 (S.D. Tex. 2012) (conditionally certifying class of workers paid "straight time for overtime"); *Vargas v. Powell Trident Co.*, No. H-09-1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010) (same).

[11] *See also Walker v. Honghua America, LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012) (Ellison, J.); *Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 690 (S.D. Tex. 2013) (Harmon, J.); *Coffin*, 2011 WL 1103795, at *3 (finding that arguments going to the ultimate merits question of an FLSA dispute were inappropriate at the notice stage of conditional certification and "not a persuasive basis to deny notice[.]"); *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 804 (S.D. Tex. 2010) (Rosenthal, J.) ("neither stage of certification is an opportunity for the court to assess the merits of the claim by deciding factual disputes or making credibility determinations.").

the collective action upon a showing that the case lacks merit for a collective action (*i.e.*, that the plaintiffs are not "similarly situated" under 29 U.S.C. § 216(b)). *Mooney*, 54 F.3d at 1214. Indeed, at the notice stage "it is not appropriate to require the plaintiff to produce evidence sufficient to survive summary judgment or to otherwise test the merits beyond the light burden of production to show potential class members are similarly situated." *McKnight*, 756 F.Supp.2d at 804.

### 6.1. An Analysis of OneSource's Class-Wide Exemption Defenses is Premature.

Powell further anticipates that OneSource will argue against conditional certification claiming that the Putative Class Members are exempt from overtime pay under the one of the white-collar exemptions. By arguing these exemptions, OneSource will likely make the standard defense argument against conditional certification—that no two workers are alike, and that the Court must analyze each worker's job duties independently instead of as a group.

First, OneSource's anticipated tactic also ignores the single-issue common to all the exemptions OneSource claims—the fact that each of these claimed exemptions required OneSource to pay the Putative Class Members on a "salary basis." *See* 29 C.F.R. § 541.100(a)(1) (executive exemption requires salary basis); 29 C.F.R. § 541.200(a)(1) (administrative exemption requires salary basis); 29 C.F.R. § 541.300(a)(1) (professional exemption requires salary basis); 29 C.F.R. § 541.601(b)(1) (highly compensated employee exemption requires salary basis). OneSource did not pay these workers on a salary basis; instead, it paid them all straight time for overtime.[12]

The FLSA regulations' definition of "salary basis," establishes a general rule that:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, **which amount is not subject to reduction because of variations** in quality or **quantity of the work performed**. [Subject to exemptions] an exempt employee must receive the full salary for any week in which the employee performs any work **without regard to the number of days or hours worked.**

---

[12] Ex. A, at ¶¶ 13, 15; Ex. F at pp. 1-3 (Answer to Interrogatory No. 1).

29 C.F.R. § 541.602(a) (emphasis added). And it is well settled that an employee's earnings may only be computed daily without violating the salary-basis requirement if: (1) the employment arrangement includes a guarantee of a minimum weekly amount of $684.00 [previously 455.00] paid irrespective of the number of days worked; and (2) a reasonable relationship exists between the guaranteed amount and the amount actually earned. 29 C.F.R. § 541.604(b) (emphasis added).

OneSource does not guarantee the Putative Class Members a predetermined weekly (or less frequent) amount of $684.00 [or $455.00] irrespective of days worked.[13] In fact, the opposite is true. OneSource only pays the Putative Class Members the same hourly rate for all hours they worked.[14] But the regulation provides that salary pay "is not subject to reduction because of variations in the … quantity of the work performed," and that "an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." 29 C.F.R. § 541.602(a). Notably, OneSource's own classification of its "Exempt" employees is not limited to its salaried employees. OneSource's Employee Handbook contains *distinct* definitions for "Salaried vs. Hourly Employees" and "Exempt vs. Non-Exempt" employees. OneSource's definition of employees it classifies as "Exempt" does not contain any reference to being compensated a salary. *See* Ex. E at ONESOURCE 000043 – 000044. Accordingly, because OneSource cannot meet the salary basis test, all of the Putative Class Members are non-exempt, regardless of their job duties or other individualized employment characteristics.

Second, Courts routinely grant conditional certification without making factual determinations as to the merits of employers' exemption defenses, and courts in the Fifth Circuit have specifically held that exemption defenses "are merits-based defenses to FLSA claims" that courts "typically hold to be irrelevant at this initial, notice stage of the case." *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp.

---

[13] *Id.*
[14] *Id.*

3d 761, 774 (S.D. Tex. Dec. 9, 2015) (Lake, J.); *Turner v. Nine Energy Service, LLC*, No. H-15-3670, 2016 WL 6638849, at *7 (S.D. Tex. Oct. 4, 2016), *adopted at* 2016 WL 6652747 (S.D. Tex. Nov. 9, 2016).[15] And even if an exemption defense may apply to the case (they do not), that is not enough to prevent conditional certification of a class. *Turner*, 2016 WL 6638849, at *7.

**D.    NOTICE & CONSENT PROCEDURE**

To facilitate the Notice process and preserve the rights of those who have not yet opted-in, Powell proposes the attached Notice and Consent Forms, including proposed telephone and email scripts, as well as their proposed Notice timeline for approval by the Court. *See* Ex. G (Proposed Notice and Consent Forms). Variations of the proposed Notice and Consent Form have been adopted by courts in several districts throughout the United States.[16] The same is true of Powell's proposed opt-in timeline.

**1.    The Production of Contact Information and the Issuance of Reminder Notices is Routine in FLSA Collective Actions.**

Powell requests the Court order OneSource to provide Plaintiffs' Counsel with the names, last known home addresses, email addresses (both personal and work, where available), and phone numbers for all Putative Class Members. Courts in the Fifth Circuit, including this Court, routinely require this information to facilitate the issuance of notice.[17] *See Jones*, 149 F.Supp.3d at 775-76. The

---

[15] *See also McPherson v. LEAM Drilling Systems, LLC*, No. 4:14-CV-02361, Doc. 84 (S.D. Tex. Mar. 30, 2015) (Harmon, J.) (granting conditional certification of nationwide class of oilfield workers over employer's objections that individualized analyses were required due to various exemption defenses and noting that employer could later move to decertify the class); *Dreyer v. Baker Hughes Operations, Inc.*, No. H-08-1212, 2008 WL 5204149, at *2 (S.D. Tex. Dec. 11, 2008) (Smith, M.J.) (rejecting employer's argument that the application of multiple FLSA exemptions counseled against conditional certification because "exemptions are merits-based defenses to an FLSA claim" that "cannot defeat conditional certification.").

[16] *See Hester*, 4:18-cv-1078, Doc. 69, at *2 (approving virtually identical proposed Notice and Consent forms without revision).

[17] *See, e.g., Mairena-Rivera v. Langston Construction, LLC*, No. 16-850-JJB-EWD, 2017 WL 2778346, at *6 (M.D. La. June 27, 2017) (ordering the production of names, last-known addresses, and e-mail addresses of potential claimants in order granting conditional certification); *Ramirez v. Load Trail, LLC*, 333 F.R.D. 89, 96 (E.D. Tex. 2019) (ordering production of names, job titles, addresses, telephone numbers, social security numbers, and e-mail addresses of putative class members, and permitting e-mail notice and a 30-day reminder notice); *Dyson v. Stuart Petrol. Testers, Inc.*, 308 F.R.D. 510, 517 (W.D.

production of email addresses and the allowance of email and text message notice is particularly important because the Putative Class Members work for long periods of time in remote locations that are far away from home, and will eat, sleep, and work at or near the jobsite, making it difficult (or even impossible) to regularly receive mail.[18] For this same reason, it is also important for the Court to issue a reminder notice, like it has done in similar cases involving oilfield workers. *Jones*, 149 F.Supp.3d at 776 (allowing an identical reminder notice where plaintiff identified a specific reason for needing a reminder notice—*i.e.*, potential class members work at remote locations for extended periods of time—as here).

### 2. Email and Text Message Notice Should be Provided to Putative Class Members.

Due to the transitory nature of the Putative Class Members, Powell requests the notice be sent via email and text message, as well as via first class mail. Email notice has become an accepted—and even a preferred—form of notice in FLSA collective actions. *See Thrower v. UniversalPegasus, Int'l Inc.*, No. 3:19-CV-00068, 2020 WL 5258521, at *9 (S.D. Tex. Sept. 3, 2020) (approving mail, e-mail, and text message notice in an FLSA collective action); *Mairena-Rivera*, 2017 WL 2778346, at *6 (M.D. La. June 27, 2017) (approving e-mail notice); *Ramirez*, 333 F.R.D. at 96; *Wade v. Furmanite America, Inc.*, No. 3:17-cv-00169, 2018 WL 2088011, at *7-8 (S.D. Tex. May 4, 2018); *Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-cv-603-RP, Doc. 57, at *2 (W.D. Tex. Mar. 16, 2015) (citing *Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *5 n.9 (N.D. Tex. Nov. 29, 2012)); *Hester*, 4:18-cv-1078, Doc. 69, at *10-12 (describing

---

Tex. 2015) (ordering production of names, addresses, email addresses, and phone numbers); *Beall v. Tyler Techs., Inc.*, No. 2-08-cv-422, 2009 WL 3064689, at *1 (E.D. Tex. Sept. 23, 2009) (granting class notice via email and compelling the employer to produce all email addresses, both personal and work); *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:08-cv-00722-RCJ-PAL, 2009 WL 102735, at *15 (D. Nev. Jan. 12, 2009) (granting circulation of notice via U.S. mail and email); *Ortiz v. Rain King, Inc.*, No. 4:02-cv-04012, 2003 WL 23741409, at *1 (S.D. Tex. Mar. 10, 2003) (ordering the defendant to produce the names, addresses, and phone numbers of class in a readable computer format); *Alba v. Madden Bolt Corp.*, 2002 WL 32639827, at *1 (S.D. Tex. June 5, 2002) (ordering the defendant to produce the full name, last known address, telephone numbers, dates and location of employment for prior three years); *see also Hoffmann-LaRoche*, 493 U.S. 165, 170 ("The District Court was correct to permit discovery of the names and addresses ….").
[18] Ex. A, at ¶¶ 19-21; Ex. B, at ¶¶ 20-22; Ex. C, at ¶¶ 20-22.

email as a "common, and often primary, means of communication for many workers" and allowing notice to be sent via email). Writing specifically about oilfield employees, Courts in this Circuit have explained that "email notification can be particularly beneficial in situations where potential opt-in plaintiffs are away from home for extended periods of time." *Stage 3 Separation*, No. 5:14-cv-603-RP, Doc. 57, at *2. Therein, the court explained that email notice should be the rule in providing class notice:

> [I]n 2015 it should rarely be entertaining arguments about the appropriateness of email notice. Email is not the wave of the future; email is the wave of the last decade and a half. **Many people use their email address as their primary point of contact, and in almost every situation, more opt-in plaintiffs will be on notice of a pending collective action if the potential class members are also notified via email**.

*Id.* (emphasis added).

In fact, courts routinely order email notice because "notice by e-mail will more likely reach potential class members than regular mail sent to the home address …" and because it is "appropriate and necessary … because [it is] intended to further the broad remedial purposes of the FLSA by providing notice to employees whose work undisputedly requires them to travel to oilfields and stay away from home for days at a time." *Jones*, 149 F.Supp.3d at 776; *Wade,* 2018 WL 2088011, at *7-8; *Jaso v. Bulldog Conn. Specialists LLC*, No. 2:15-cv-269, Doc. 17, at *12 (S.D. Tex. Oct. 15, 2015); *Benzon v. National Oilwell Varco, L.P.*, No. 4:14-cv-02582, Doc. 33 (S.D. Tex. June 18, 2015) (allowing notice via email).[19]

Similarly, text message notice has recently become an accepted form of notice in FLSA collective actions in Fifth Circuit courts. *See Thrower*, 2020 WL 5258521, at *9 (S.D. Tex. Sept. 3, 2020); *Barnes II, et al. v. Gracia Mexican Kitchen, LLC, et al.*, No. 2:18-cv-00140, Doc. 63 (S.D. Tex. Jan. 22, 2019); *Self, Jr. v. Quinn's Rental Services (USA), LLC*, No. 4:15-cv-01569, Min. Entry dated Feb. 29, 2016

---

[19] *See also, Zook v. W&W Energy Svcs., Inc.*, No. 7:15-cv-00201-RAJ-DC, Doc. 21, at *7 (W.D. Tex. May 5, 2016) (Counts, M.J.); *Crow v. ProPetro Svcs., Inc.*, No. 7:15-cv-00149-RAJ-DC, Doc. 33, at *11 (W.D. Tex. May 4, 2016) (Counts, M.J.); *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 516-18 (W.D. Tex. B015) (Pitman, J).

(S.D. Tex. Feb. 29, 2016) (approving text message notice).[20]

### 3. Powell Should be Allowed to Follow-up with Select Class Members by Telephone.

Powell requests the notice schedule in this matter accommodate the follow-up of Putative Class Members by telephone in the limited circumstances of their mailed or emailed Notice and Consent Forms being returned as undeliverable. Employees who have left the employment of a company frequently do not provide their former employer with up-to-date contact information. *See Lopez v. WS Energy Servs., LLC*, No. 2:15-cv-135, Doc. 33, at *3 (S.D. Tex. Oct. 15, 2015); *see also Richard v. Flower Foods, Inc.*, 222 F.Supp.3d 516, 528 (W.D. La. 2016) (ordering the production of last known telephone numbers of putative class members). As courts have noted, "telephone numbers … provide a more stable means of contacting a person who has moved than a mailing address." *Jaso*, No. 2:15-cv-269, Doc. 17, at *6 (citing *Dyson*, 308 F.R.D. at 516-17); *see also*, *Jones*, 149 F. Supp. 3d at 776. For this reason, Powell requests the notice schedule accommodate follow-up telephone calls by Class Counsel to those certain Putative Class Members whose contact information, during the course of the notice period, is shown to be incorrect or no longer valid.

### E.    CONCLUSION

For the foregoing reasons, Powell respectfully request the Court grant his Motion and approve his proposed Notice and Consent Forms and opt-in procedures.

Respectfully Submitted,

By: */s/ Carl A. Fitz*
**Michael A. Josephson**
Texas Bar No. 24014780
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Carl A. Fitz**
Texas Bar No. 24105863

---

[20] *See also Nazih v. Café Istanbul of Columbus, LLC*, No., 2:17-cv-947, 2018 WL 4334613, at *6 (S.D. Ohio Sept. 11, 2018); *Landry v. Swire Oilfield Servs., LLC*, 252 F. Supp. 3d 1079, 1129 (D.N.M. 2017); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015).

**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
adunlap@mybackwages.com
mjosephson@mybackwages.com
cfitz@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**AND**

*/s/ Philip Bohrer*
**Philip Bohrer (#14089)**
phil@bohrerbrady.com
**Scott E. Brady (#24976)**
scott@bohrerbrady.com
**BOHRER BRADY, LLC**
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana 70809
Telephone: (225) 925-5297
Facsimile: (225) 231-7000

**ATTORNEYS IN CHARGE OF PLAINTIFFS AND THE PUTATIVE CLASS MEMBERS**

**CERTIFICATE OF SERVICE**

On September 9, 2020, I served a copy of this document on all registered parties and/or their counsel of record, via the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

*/s/ Carl A. Fitz*
**CARL A. FITZ**

17

## CERTIFICATE OF CONFERENCE

Prior to filing this Motion, Plaintiff's Counsel conferred with OneSource's counsel, however agreement as to certification could not be reached.

*/s/ Carl A. Fitz*
**CARL A. FITZ**