UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

WILLIAM POWELL, *individually and on behalf of others similarly situated*

CIVIL ACTION

VERSUS

20-161-SDD-RLB

ONE SOURCE EHS, L.L.C.

**RULING**

This matter is before the Court on the *Motion for Conditional Certification and Court-Authorized Notice*[1] filed by William Powell ("Powell"). One Source EHS, L.L.C. ("Defendant") filed an *Opposition*,[2] to which Powell filed a *Reply*.[3] Powell also filed a *Supplemental Brief*.[4] Defendant filed a *Response*,[5] to which Powell filed a *Reply*.[6] For the following reasons, Powell's *Motion* shall be granted in part.

**I.    BACKGROUND**

This overtime wage dispute arises under the Federal Labor Standards Act ("FLSA"). Defendant provides environmental, health, and safety management services to refineries.[7] Powell alleges that when he worked for Defendant from July 2018 to March 2019 as a safety manager, Defendant paid him the same hourly rate for all hours worked, including those in excess of 40 hours per week.[8] This type of payment schedule is known as "straight time for overtime."[9] Powell alleges that he was an hourly, rather than a

---

[1] Rec. Doc. No. 14.
[2] Rec. Doc. No. 15.
[3] Rec. Doc. No. 18.
[4] Rec. Doc. No. 25.
[5] Rec. Doc. No. 27.
[6] Rec. Doc. No. 28.
[7] Rec. Doc. No. 1, p. 3.
[8] *Id.* at 2–3.
[9] *Id.* at 2.

68610

salaried, employee, which Defendant disputes.[10] He asserts that Defendant's straight time for overtime payment system violates the FLSA.[11] Powell alleges that Defendant has utilized a straight time for overtime system with numerous employees, and he seeks to bring this action on behalf of himself and others similarly situated under 29 U.S.C. § 216(b).[12]

Powell asks the Court to certify his proposed collective of: "All hourly employees of OneSource during the past 3 years who were paid straight time for overtime."[13] He also asks the Court to authorize notice to those proposed plaintiffs.[14] For the reasons that follow, the Court grants in part Powell's *Motion*.

## II.  LAW AND ANALYSIS

### A. Legal Background

After the parties had fully briefed conditional certification and notice to the proposed collective using the well-accepted *Lusardi*[15] test, the Fifth Circuit dethroned *Lusardi* in *Swales v. KLLM Transp. Servs., L.L.C.*[16] Under *Lusardi*, a district court considering a motion for conditional certification and notice to a proposed collective under 29 U.S.C. §216(b) used a two-step analysis.[17] In step one, termed "conditional certification," a court determined whether, based on the pleadings and affidavits of the parties, the proposed members of the collective were similar enough to receive notice of

---

[10] *Id*. at 3; Rec. Doc. No. 4, p. 7.
[11] Rec. Doc. No. 1, p. 3.
[12] Id. at 4.
[13] *Id*. at 2.
[14] Id. at 4.
[15] *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).
[16] 985 F.3d 430 (5th Cir. 2021).
[17] *Id*. at 436.

the pending action.[18] Step two came after the close of discovery.[19] In step two, a court made a final determination, using a stricter standard, as to "whether the named plaintiffs and opt-ins [were] 'similarly situated' and [could] therefore proceed to trial as a collective."[20] Courts used the following factors to make that determination: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations."[21]

The *Swales* court rejected *Lusardi* for two reasons. First, the court noted that "the *Lusardi* test comes in many varieties" and that the "amorphous and ad-hoc test provides little help in guiding district courts in their notice-sending authority."[22] Second, the court noted that § 216(b) says nothing about "conditional certification."[23] In other words, the first step of the *Lusardi* test had no basis in the statutory text.

Instead, the *Swales* court stated that "the district court's job is ensuring that notice goes out to those who are 'similarly situated,' in a way that scrupulously avoids endorsing the merits of the case."[24] Under *Swales*, the first step is for the district court to "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated,'" and the court should authorize preliminary discovery accordingly.[25] In the second step, the court looks at all the evidence before it and determines whether the proposed collective is in fact "similarly

---

[18] *Id*.
[19] *Id*. at 437.
[20] *Id*.
[21] *Id*. (cleaned up).
[22] *Id*. at 439–40.
[23] *Id*. at 440.
[24] *Id*.
[25] *Id*. at 441.

situated," with an eye toward ensuring that the collective action does not "devolve into a cacophony of individual actions."[26] The three factors from the second step of the *Lusardi* test were undisturbed by *Swales* and thus are still relevant.

In *Swales*, the plaintiffs drove trucks for the defendant.[27] The plaintiffs argued that the defendant had misclassified them as independent contractors rather than employees, and they sued for violations of the FLSA's minimum wage requirement.[28] The determination of whether someone is an independent contractor or employee is often fact-intensive and is driven by the economic-realities test.[29]

The Fifth Circuit faulted the district court for failing to consider evidence that went to the differences between the named plaintiffs and proposed opt-ins.[30] The district court declined to do so because, in its view, those differences went to the merits question of whether any of the proposed plaintiffs were employees (and thus entitled to the protections of the FLSA) or independent contractors (and thus not entitled to the protections of the FLSA).[31] The Fifth Circuit stated that merits questions such as independent contractor or employee may be considered at the notice stage, if the evidence is available, because the resolution of that issue bears on whether the proposed plaintiffs are "similarly situated."[32] And when applying the above rule, the court stated that lower courts must consider meaningful differences amongst members of the proposed collective that, while the differences may ultimately bear on merits issues, are also

---

[26] *Id*. at 442–43.
[27] *Id*. at 438.
[28] *Id*.
[29] *Id*. at 442.
[30] *Id*. at 441.
[31] *Id*.
[32] *Id*. at 442–443 ("When a district court ignores that it can decide merits issues when considering the scope of a collective, it ignores the 'similarly situated' analysis and is likely to send notice to employees who are not potential plaintiffs.").

68610

determinative as to whether those merits issues can be decided collectively.[33] In sum, the Fifth Circuit stated that the district court must consider all of the evidence before it to determine whether the proposed collective is similarly situated, even if that evidence also bears on an ultimate merits issue.

Finally, the *Swales* court noted the dual goals of collective actions: "(1) enforcement (by preventing violations and letting employees pool resources when seeking relief), and (2) efficiency (by resolving common issues in a single action)."[34] The court also noted the dangers of collective actions: "(1) the opportunity for abuse (by intensifying settlement pressure no matter how meritorious the action); and (2) the appearance of court-endorsed solicitation of claims (by letting benign notice-giving for case-management purposes warp into endorsing the action's merits, or seeming to, thus stirring up unwarranted litigation)."[35] These policy goals and considerations of adverse consequences inform the Court's analysis.

### B. Overtime Law and Exemptions

With that background in place, the Court turns to the instant case. The parties have completed preliminary discovery on the "similarly situated" issue, so the Court need only determine whether the putative members of the proposed collective are in fact similarly situated. The Court must conduct this analysis against the backdrop of the relevant law.

The FLSA requires that employers pay their employees at a rate of at least one and one-half times their regular rate for the hours an employee works in excess of a 40-hour workweek.[36] But employers do not have to pay time-and-a-half to individuals

---

[33] *Id.*
[34] *Id.* at 435.
[35] *Id.*
[36] 29 U.S.C. § 207(a)(1).

"employed in a bona fide executive, administrative, or professional capacity."[37] These exemptions are affirmative defenses to overtime pay claims—the burden to assert them rests with the defendant.[38]

For each of the exemptions to the overtime provisions of the FLSA, the Secretary of Labor has promulgated a test for determining whether a given employee is exempt.[39] The tests vary, but they all share two similarities: (1) the exempt employee must be compensated on a salary or fee basis, and (2) the exempt employee must do certain tasks pertinent to each exception.[40] 21 C.F.R. § 541.062 provides:

> (a) General rule. An employee will be considered to be paid on a "salary basis" within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.
>
> (1) Subject to the exceptions provided in paragraph (b)[41] of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work.

**C. The Parties' Arguments**

Powell alleges that Defendant had a policy of paying hourly employees straight time for overtime.[42] Powell presented evidence in the form of timesheets and paystubs

---

[37] *Id*; 29 U.S.C. § 213(a)(1).
[38] *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 310 (5th Cir. 2021).
[39] 29 C.F.R. § 541.100 (executive employee exception); 29 C.F.R. § 541.300 (professional employee exception); 29 C.F.R. § 541.200 (administrative employee exception).
[40] 29 C.F.R. § 541.100 (executive employee exception); 29 C.F.R. § 541.300 (professional employee exception); 29 C.F.R. § 541.200 (administrative employee exception).
[41] None of which appear to be relevant at this juncture.
[42] Rec. Doc. No. 25, p. 7.

that demonstrates that the entire proposed collective of ten members was paid straight time for overtime.[43]

Defendant rebuts that "[t]here is nothing unlawful about paying exempt employees straight time for overtime"[44] and cites 29 C.F.R. 541.604(a) which provides in relevant part:

> An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis…. Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $684 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek. Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off.

Defendant argues that, since it is legal to pay an exempt employee straight time for overtime, Powell cannot meet his burden of demonstrating that the members of the collective are similarly situated without also presenting evidence that Powell, and the other members of the proposed collective, were misclassified as exempt pursuant to a decision, plan, or policy to which they were all subject.[45] Defendant also lambasts Powell's evidence as insufficient to show that the putative members of the proposed collective were not paid a minimum guaranteed biweekly amount.[46]

### D. Analysis

Defendant's argument is essentially that Powell must proffer evidence that he, and the members of the proposed collective, will be able overcome Defendant's affirmative

---

[43] *Id.* at 8 and citations therein.
[44] Rec. Doc. No. 27, p. 3.
[45] *Id.*
[46] *Id.* at 5–7.

defenses before the Court can authorize notice. That cannot be the case. At this stage, the focus is on whether the merits of the proposed collective's case can be decided collectively. In fact, the second step of the *Lusardi* analysis considers whether the defendant would assert different defenses as to each potential plaintiff,[47] and Defendant's *Opposition* makes it clear that its defenses will be identical as to each proposed plaintiff.

The first *Lusardi* factor, "the disparate factual and employment settings of the individual plaintiffs,"[48] also yields the conclusion that allowing this case to proceed as a collective is appropriate. Powell's argument is that non-exempt employees were paid straight time for overtime. The differences in the employment settings of those employees do not matter for Powell's case, although they may be germane to Defendant's affirmative defenses. Likewise, any factual differences such as "base" compensation, dates worked, worked performed, and job titles are irrelevant. This factor weighs in favor of allowing this action to proceed as a collective.

The third *Lusardi* factor, "fairness and procedural considerations,[49] also weighs in favor of collective action. Powell admits that the "entirety of the putative class [is] ten members in total."[50] This strongly decreases the potential for the "cacophony of individual actions" forewarned in *Swales*. Additionally, Powell alleges that Defendant has a policy of inappropriately paying straight time for overtime, so it is fair and procedurally efficient to litigate all of the claims together.

The Court is cognizant of the fact that analysis of Defendant's affirmative defenses will likely require some individualized determinations. However, at this procedural

---

[47] *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 437 (5th Cir. 2021) (cleaned up).
[48] *Id.*
[49] *Id.*
[50] Rec. Doc. No. 25, p. 8.

posture, the focus is on the merits of the plaintiff's case. As such, the Court will authorize notice to a proposed collective—but not the one Powell proposes.

Powell proposes a collective of: "All hourly employees of OneSource who were paid straight time for overtime in the past three (3) years." As Defendant points out, it is disputed whether the members of the proposed collective were hourly. That issue is the whole crux of the case, and Powell cannot imbed a legal conclusion in his proposed notice. Therefore, the Court grants Powell's *Motion* insofar as the Court will authorize notice to a collective but denies Powell's *Motion* insofar as he requests notice to a collective of "[a]ll hourly employees of OneSource who were paid straight time for overtime in the past three (3) years."[51] The Court authorizes notice to a collective of: "All employees of OneSource who were paid straight time for overtime in the past three (3) years."

### III. CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the *Motion for Conditional Certification*[52] filed by Plaintiffs is GRANTED in part and DENIED in part.

**IT IS FURTHER ORDERED** that the Parties shall confer regarding the form and content of notice to the proposed collective.

**IT IS FURTHER ORDERED** that the Parties submit a joint *Motion* for a joint proposed notice to the proposed collective within 15 days of the date of this *Ruling*. If the Parties are unable to agree on a proposed notice, the Parties shall separately submit (1) their proposed notice and (2) their objections, with supporting authority, to the opposing

---

[51] Rec. Doc. No. 25, p. 2.
[52] Rec. Doc. No. 14.

68610

party's proposed notice and/or consent form, within 15 days of this *Ruling*, and request an expedited status conference on the matter.

**IT IS FURTHER ORDERED** that the opt-in period for putative collective members shall be 120 days from the date that a final notice is approved by this Court.

Should it become appropriate, the Court will consider a *Motion* to decertify the collective at the close of discovery.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on September 16, 2021.

**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

68610